Good morning, counsel. Good morning. I'm Jay Lichtman for Mr. Johnson. I ask for four minutes of rebuttal, if that's permissible. We raised two main arguments, and they're both based on the Pinkerton Instructions. By the way, Your Honor asked about the location of the Pinkerton Instructions. This is on page six of our reply brief. Instructions 12, 13, 14, 18, and 19. There were five Pinkerton Instructions. My question was just to be clear, which one are ones you're challenging? We're not disputing that. There's a difference between whether Pinkerton can be used to find someone guilty of robbery based on his involvement in conspiracy. It's a different question whether Pinkerton robbery can be a 924c predicate under a categorical analysis. Those are two different things, two different questions. The Henry issue that I'd like to discuss is whether Hobbs Act robbery based on Pinkerton is categorically a crime of violence. We would submit that it's not a valid crime of violence predicate under Taylor and Borden, and also under Gomez that was recently decided this year. Let me get back. There's two main issues here. Whether, number one, the district court committed instructional error by permitting the jury to convict the defendant of 924c based on Hobbs Act conspiracy, as the court pointed out previously in the other case, there was a general verdict. It wasn't clear whether the jury based its finding on the invalid conspiracy predicate or whether it based it on the robbery predicate. I'll get to your question previously about this harmless error, which seems to be what was litigated in the briefs. The second issue relates to whether categorically Hobbs Act robbery is a valid predicate. Referring now to the instructional error, the instructional error was permitting or giving the five Pinkerton instructions and letting Mr. Johnson be convicted based on the conspiracy, and as long as the use of the gun was foreseeable. The error was not harmless because we submit that the main proof of conspiracy was the testimony of Veronica Burgess that several days before the robbery, Mr. Johnson was at a planning meeting, and the government in closing, both in the opening closing and the final closing, referred to the Burgess testimony, noting there's been a lot of talk about Veronica Burgess, and then immediately following the argument about Burgess, the government cites the Pinkerton theory, whether that a defendant or a member of the conspiracy can be found guilty of robbery or the use of the firearm. We understand that her testimony, it sounds like, was very thoroughly impeached, so the district court, though, thought he had a valid predicate, as we've just discussed, and the district court also ruled that there was other evidence of conspiracy apart from Burgess, including just the way the robbery was obviously a coordinated effort. What about that? Well, Burgess was the only event that occurred before the day of the robbery, and so the other parts, the overt acts and the conspiracy related to what happened on the day of the robbery, getting the car ready, getting the guns ready, etc. But because, in this case, the instructions were inundated by Pinkerton, and because the government referred to these Pinkerton instructions, and because they emphasized Burgess' testimony, it may well have been that the jury convicted Mr. Johnson of all of the counts, robbery and the gun count, based on their conclusion he was part of the conspiracy, meaning he was at the planning meeting several days before the robbery. And if they did that, would it require that they believed Burgess' testimony? Are you arguing that they weren't free to do that? No, the jury may have, and that's the problem here, because if the jury... They did, and maybe they didn't. We don't know. That's right. But she wasn't the only evidence of conspiracy, is my point, and that's what the district court relied upon. Right, but we're looking factually whether there was harmless error in giving the invalid instruction. And the jury may have convicted Mr. Johnson of both robbery and the gun count, based on their belief that he was guilty of conspiracy, even though they didn't conclude he was actually one of the robbers. How would that... So what evidence would the jury be relying on to find use of a firearm and further into the conspiracy, but not the robbery? Well, let's look at what evidence was introduced against Mr. Johnson at the trial to see whether the effect that that conspiracy theory may have had. In other words, whether being found guilty of the substantive crimes based on being part of the planning meeting and not being an actual robber. So you need to look at the other evidence that was introduced in the case to see whether there was harmless error. And if you look at the other evidence, there was eyewitness evidence that's tended to point more to innocence than to guilt because of the descriptions given by these eyewitnesses of the robber being shorter than Mr. Johnson, less weight than Mr. Johnson, thinner nose. So if anything, the eyewitness testimony was minimal. But for the, I guess, assuming we are bound by Henry, you have to establish that the jury convicted on conspiracy, that the jury viewed as the predicate for 924, the conspiracy and not the Pinkerton or the robbery itself. Is that right? Well, I think that clearly conspiracy was an invalid predicate. We contend that... But for the harmless error, that somehow the jury convicted, used, improperly used the conspiracy as a predicate, but not the Pinkerton or not the Pinkerton theory or the robbery itself. Okay. Robbery itself, which was decided in Eckford. We have presented arguments in our briefs that you, and also, Mike Williams' counsel has presented arguments in the briefs that the court might want to take another look at the Eckford. Right. And I'm not intending to quarrel with you, but it just, is that right in terms of logically that the jury would have had to have been incorrectly relying on only the conspiracy predicate and not either of the other two for you to win? Well, we contend that to convict of Mr. Johnson of robbery, based on a Pinkerton theory, you have to look at it categorically. Whether categorically, robbery pursuant to Pinkerton is a crime of violence, because you're... So I think we understand that. I think Judge Johnson's trying to ask a different question. You have authority now that cuts against you on Pinkerton, which is Henry, and you have authority on Hobbs Act robbery that cuts against you, and I think you've acknowledged that and also been very careful to preserve your argument. But what I understood you to be saying today is they may have convicted your client slowly on the conspiracy count. And so I think what we're trying to probe is how would that look? Because the district court considered that, and the district court considered that it made no sense that your client would have used a firearm only in furtherance of the conspiracy rather than the robbery. Yeah, I actually didn't understand the district court's reasoning. You don't use a gun, and conspiracy is an agreement, so you don't use a gun during an agreement. But since you're asking the question of whether Hobbs Act robbery based on Pinkerton, whether that's a crime of violence, because we're... We're not asking... This is a different question. This is a harmless error. We're trying to get to... This is the harmless error question. I'm just trying... Are you not then arguing that the jury found its predicate in the conspiracy and not on these other two grounds that our court has said are sufficient? I'm arguing that the jury may have found Mr. Johnson guilty of robbery and 924C based on its conclusion that he was a conspirator, but not necessarily that he was actually one of the robbers. Right. So right there, that's what we understood. I think it sounds like Judge Johnson and I both understood that from your briefing, and I think the district court understood that, and he was even willing to say, let's assume that that count one instruction was error, and the jury misunderstood that, and I think the government argued that the jury could have relied on a conviction under count one conspiracy to serve as the predicate. And what the district court, I understood, is ordered to be saying is that really would make no sense. A 924C, that they would have convicted your client beyond a reasonable doubt of using a gun in furtherance of an oral agreement of a conspiracy, a standalone conspiracy, without it being, you know, looking to count two conspiracy to rob the armored truck. It really just doesn't seem to make much sense at all, and that's what I understood the district court to be saying. I don't think the district court, the district court also, I think, discussed whether there was other evidence introduced to lead the, to make the instructional error harmless, by saying that, well, they could have, they should have, they likely convicted him of the robbery, being a robber, and so it nullified the effect of the invalid conspiracy violation. But I'm saying that there really wasn't that much evidence against Mr. Johnson in terms of what was introduced to show he was a robber. If you're going to do the factual analysis, that would be helpful to run through that. Jamal Dundigan testified, right, about having spoken to Mr. Johnson, and then Mr. Johnson apparently told him that his foot was wrapped, that he shot himself in the foot on that day, right? And there was DNA evidence from that. Why is that insufficient? Okay, let me, if I could, well, first of all, to answer your question directly, on Dundigan, we argued IAC claims that, uncertified claims, but in denying the IAC on Dundigan, the district court said that there was no prejudice, prejudice under Strickland, because Dundigan was impeached at trial. So the district court actually found he'd been impeached, and there was plenty of evidence impeaching him. So, and also, in the uncertified- But just opposing counsel's point, if we're going to have this conversation, it would be helpful to me to hear your response to opposing counsel, which is that Dundigan knew details he wouldn't have known, like the amount of money, for example, that was taken in the robbery. What about that? In other words, the jury could have said, this guy's impeached, this guy's, we have a lot of reason to doubt this person's credibility generally. But his story on this episode rings true, because he knew about these details. That's the government's theory. What about that? Well, these are gang members. Dundigan was the head of the gang. When things happen, like a robbery, word gets out in the neighborhood, among the gang members. And since he had a lot of pull in the gang, he could have easily found out information. What about the DNA evidence? Okay, let's, let me talk about that, Your Honor. We're talking about one hair that matched Mr. Johnson, according to the criminalist's testimony. There were other hairs found in the wig or hat, however you want to refer to it, which were hairs of other people. There were even some animal hairs. But this match was a one in 100 quadrillion match. I understand. But there were, we're talking now, of course, like I said, about one hair. But you can... I think it's four hairs, but whatever it is... No, it was one. They tested the four hairs, and they matched one hair to Mr. Johnson. But as their criminalist said or testified, you can't tell how long the hair was in the hat. You can't tell what body, what part of the body the hair came from. They talked about hair being transient, that it could be transferred from the original source to a subsequent source. And perhaps most important, they talk about where is DNA. This is criminalist Mastrocovo. He said, where is DNA is the most accurate way of determining whether someone wore a hat. And so what he did was he cut a patch out of the front of the hat to test it to see if there was a match to Mr. Johnson on the where is DNA. And he could not make a determination as to the DNA. So then three and a half years later, right before trial, the government asked him to do it again, to test again. And again, he said he could not find any connection to Mr. Johnson in that. So I would say at best, the hair evidence or the DNA evidence was at least inconclusive as to Mr. Johnson because of all these other factors about whether, in fact, it was warned at the time of the robbery. So you've got, just to sum it up, you've got eyewitness testimony that's helpful, more helpful to Mr. Johnson. You have inconclusive DNA testimony. And then you have the so-called snitches being impeached. So there wasn't much left in terms of trial evidence, and which shows then that the instructional era was not harmless. With my time running out, let me just... You've exceeded your time, counsel. I'll give you a minute for rebuttal. You've exceeded your time. When it's in the red, that means you've gone over your time. Oh, I'm sorry. That's all right. Okay, so... I'll give you a minute for rebuttal. Okay. Thank you.  Good morning, Your Honor. Saria Bahadur on behalf of the United States. So I'll focus on the harmless error analysis, but I think to Judge Johnstone's question, I do think that to prevail, they would have to show... It is our burden in this circuit, but there has to be a showing that the jury solely relied on the invalid predicate. And the district court was correct to dismiss that idea. And this district judge was the one who sat in on the trial and had sort of a front row seat at the credibility of not just the cooperators, but every government witness and also defense witnesses. And the district court was coming from that perspective when it said that for the jury to have relied on the shaky Burgess testimony, which again, wasn't actually a real live witness. It was mainly from law enforcement witnesses and the reading of a grand jury testimony, which does not have the same effect as a real live witness. But to rely on that shaky evidence, which is what the district judge characterized it as, and just disregarded the strong evidence incriminating the defendant, he said, would stretch the bounds of rationality. And I think that's the answer for this court from the district judge who was sitting in on the trial. And there was very strong evidence incriminating this defendant as one of the shooters. And this court actually said that in the direct appeal in this case. And it relied on the DNA. And the DNA, whether it's, you know, it was 12 hairs that were found on the hat. Eight of them were subject to microscopy, which is not the same as DNA testing. Four were subject to DNA testing. Three of them did not have a root that was amenable to the DNA testing. And then one generated that one in a hundred quadrillion match. What do we make of this?  And I don't mean to go down this rabbit hole, but about the foot, about the small... Done again. Done again. Thank you. Testifying that Johnson said he shot himself in the foot. There's other indications about him shooting himself in the foot. There's no evidence about bloody footprints anywhere. Jamal Dunnigan said that Johnson had wrapped his foot on the day that he'd seen him. And then I think quite an extended period of time later, maybe even years later, medical examinations indicating there's no sign that foot was ever injured in that way. And that had it been injured in that way, you know, there should be some evidence of it. It seems very peculiar. I think so too. I mean, it's a strange detail as well. The idea of shooting yourself in the foot. I mean, there wasn't really evidence when that happened, right? If that happened at the scene of the robbery. That he shot himself in the foot during the robbery. As he was fleeing, I think. As he was fleeing. But on that day, right? Sure. But I don't know if it was at... I mean, this was a... I think one of the detectives testified was one of sort of the largest crime scenes. Hence the lack of bloody footprint. It could have been some distance away. Is that what you're saying? That's what I'm saying. But there wasn't necessarily evidence to that point. I think one of the more important details of that testimony is that when he was asked sort of what he shot himself with. Or that the main detail was the MAC. And that MAC firearm was something that an eyewitness had actually identified as the wig wearing robber. As the weapon, the wig wearing robber was carrying. Which is quite remarkable. Also, there were two, I think, bullets or casings from... That were extracted from the armored guard's body armor. That came from a MAC 9mm gun. And a MAC was also recovered in the end. So I think that detail is probably the more poignant one. The jury heard evidence on both sides as to the foot and decided... Did they hear the evidence about the... Maybe he shot himself in the foot and the medical evidence about the examination? It did. I think the defense put that evidence on. And I think our answer was it doesn't necessarily mean just because you shot yourself in the foot that you have to go to the hospital. I think one of the cooperators testified that they don't necessarily always go to the hospital when they shoot themselves in the foot.  Perhaps not if they've just committed an armed robbery. Exactly. It's the implication. And I'm not trying to be flip. I'm just really just trying to understand some of the evidence. Understand the evidence, for sure. And I... Footnote. I think in both briefs, but in different places, since you just mentioned the burden of proof when you advised the government's position is that we're on the wrong side of a circuit split on... Since you have a minute, do you want to explain your position on that? I think when you look at Brecht, Brecht specifically talks about how the defendant has to show actual prejudice. And I think that that's where the government is coming from. Since Brecht set up that standard of harmless error analysis, and it specifically said that it's got to be the substantial and injurious effect. But really, the defendant has to show actual prejudice. We think that that's why it's coming from... Are you familiar with the Morse? This is not what this case is about. Okay, I'll try. A subsequent Supreme Court authority that talks about what it meant is that the bar is actually very, very low, but the government has the burden, but it's easy to get over. Ringing a bell. In this particular context? Well, yes, in a way. I think one of the Fourth Circuit decisions talks about this, whether it's... I think it's Said or Ali, but they talk about the differing standards, sufficiency and then plain error. And then you have harmless error, which is sort of very, very steep for the defendants, but low for the government when it's coming to how deferential this court is supposed to be. And I think it's actually tied to habeas generally. I think it's tied to habeas generally. And I think this isn't the day we're going to have this conversation, but I look forward to it. I don't think it's going to make the difference in this case. But I did appreciate your calling out that issue. I'm sure that'll come to us one day. Yes, I think so. I mean, I do want to add just a couple of other tidbits on the evidence factually. I do think that in terms of the witnesses and the specific heights, one of the witnesses actually identified the defendant from a six-pack as the wig-wearing robber. Johnson? Yes. And that's the witness gains. Again, talking about what they saw as the robbers ran past, the gardeners, the two bullets from the dead guard's body armor, and of course, the cooperator's testimony. And I think if you look at Reed, there, the court affirmed because the 924C verdict necessarily rested on both predicates. And I really think that that's what this case also shows, that factually, the predicates are inextricably intertwined. And even legally, even if the jury thought maybe this Burgess evidence has some weight and he was just a planner, and he's talking about bringing guns to an armed robbery and doesn't actually participate, he's still going to be guilty, charged and then guilty of substantive Hobbs Act robbery under Pinkerton theory of liability. And I think counsel mentioned Gomez and Borden and Taylor. None of those cases really address head-on Pinkerton liability. And in that particular context, it's not clearly, those cases are not clearly reconcilable with Henry specifically. You know, I think that's right. But I am troubled that the government changed its theory from 2255 to here, well, actually all the way through. And this is a new, this Pinkerton issue is a new issue raised now on appeal. And so I'd like to give you a chance to talk about why you think the opposing counsel has not been prejudiced by the... By the, by what in particular? Well, you're changing your theory from the... In terms of the instruction? 2255, your position, the government's position was that there was, had been error, but it was harmless. And now your position is that there really wasn't instructional error at all. I don't think that the defense has been prejudiced at all. I mean, I think his point is that there were a lot of Pinkerton instructions. And I think he probably would want there to be a Pinkerton instruction with respect to Hobbs Act robbery. It is... Because that's the point. So his argument really encompasses, the springboard is the premise for your response, it seems. I think so. But typically we wouldn't allow the government to do this. Well, they are different.  Sure. And I think they're different cases, and we briefed them separate, they weren't consolidated, and they probably should have been, because that would have made it much easier to make sure we were staying as consistent as possible. But you're raising the... Yeah, I appreciate your point, there are two different cases, but the briefing says that you've given opposing counsel notice in both cases, that you're, this is going to be the government's position. And I think you did that before you filed, they filed their reply briefs, and I think they had an opportunity to respond. But I, just to be clear, the government's changed, and now is advancing the same Pinkerton position in both cases, is it not? I mean, I'm not sure, I wanna make sure I understand the Pinkerton position. So we are simply saying that when you really look closely at the instructional error, it does appear that it was just a Pinkerton instruction. So there wasn't an error. Wasn't an error, right. Well, it wasn't a substantial and injurious error that it needs to be. Because I take your point, I take the court's point, we did proceed at trial and on the 2255 as if there was an error, which is why in our brief, we were short on this particular point and really focused on whether or not the error was harmless, because we recognize that that's how everybody proceeded below. And the government, when it talked about enclosing the two predicates, I will say it talks about conspiracy. And if you really look through the closing, you know, I controlled find a couple of times to make sure we don't mention reasonable foreseeability whatsoever. So I've done the same exercise. And I read it the same way that was not the way this case was argued. Right. And I think at the end of the day, as we mentioned in the earlier case, it does come out in the wash, because I think the court will, I think it's best to go to the harmless error analysis and to really ensure that at the end of the day, that there wasn't this type of error that was substantial and injurious for these defendants. And unless the court has any additional questions, I'm happy to submit. It appears not. Thank you, counsel. Thank you. We ask that the court affirm. Thank you. Rebuttal. One minute, please. I'll be very brief. The new theory of the government was not briefed in Johnson. And so we objected on the grounds that the government waived the argument because they didn't contain it in their briefs. The other point I'd like to make very quickly is this question of whether conviction for Hobbs Act robbery, whether Hobbs Act robbery under a Pinkerton analysis is categorically a crime of violence. We argue it's not. And helpful, I think, you have to look at other cases that have found no crime of violence, such as conspiracy to commit Hobbs Act robbery under Reed, not a crime of violence, attempted Hobbs Act robbery under Taylor, not a crime of violence, California assault with a deadly weapon, not a crime of violence under Gomez and Borden. And the reason that these are not crimes of violence is because they can be, in every case, that particular crime, it has to be always and it has to be in those innocent case. It's not an intentional infliction of a physical violent act. And therefore, the courts have found in those cases, there's no categorical match to a crime of violence. Robbery under a Pinkerton theory is the same thing. You can commit robbery under Pinkerton without the defendant ever committing a violent act. In fact, he doesn't even have to be present at the robbery. He can be at a planning meeting, for example. And so it's not consistent in terms of the reasoning of Taylor and Borden that Henry should stand. And Henry, of course, was decided before these cases, before Taylor and Gomez and Borden. And so at the time that Henry was decided, the law was what it was. But then these cases came after Henry, and the reasoning of those cases, just Henry doesn't square with that reasoning. All right. Thank you, counsel. Thank you very much. I understand your argument. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, CHRISTEN, JOHNSTONE